John J.E. Markham, II (CA Bar No. 69623)
MARKHAM & READ
One Commercial Wharf West
Boston, Massachusetts 02110
Tel: (617) 523-6329
Fax: (617) 742-8604
Email: jmarkham@markhamread.com
Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| MAMMOTHRX, INC., RYAN HILTON, and AMIR ASVADI,<br><br>Plaintiffs,<br><br>-v-<br><br>BAM INTERNATIONAL, LLC, THE MSBA GROUP, INC., and MILES STEVEN BOWN.,<br><br>Defendants. | Civil Action File No. _____<br><br>**COMPLAINT SEEKING A DECLARATORY JUDGMENT AND DAMAGES FOR BREACH OF CONTRACT, FOR NEGLIGENCE, AND FOR ATTORNEYS' FEES** |

COME NOW, Plaintiffs MammothRx, Inc, Ryan Hilton, and Amir Asvadi, for their Complaint against BAM International, LLC, The MSBA Group, Inc., and Miles Steven Bown, and allege the following:

**COMPLAINT SEEKING A DECLARATORY JUDGMENT AND DAMAGES FOR BREACH OF CONTRACT, FOR NEGLIGENCE, AND FOR ATTORNEYS' FEES**

**THE PARTIES**

1. Plaintiff MammothRx, Inc, ("Mammoth") is a corporation organized under the laws of the State of Delaware with its principal place of business in the state of California, Orange County.

2. Plaintiff Ryan Hilton ("Hilton") is an individual who is a citizen of the state of California, Orange County.

3. Plaintiff Amir Asvadi ("Asvadi") is an individual who is a citizen of the state of California, Orange County.

4. Defendant BAM International, Inc. ("BAM") is a corporation incorporated and having its principal place of business in the Commonwealth of Pennsylvania.

5. The MSBA Group, Inc. ("MSBA") is a corporation incorporated and having its principal place of business in the state of Utah.

6. Miles Steven Bown ("Bown") is a citizen of the state of Utah.

**SUBJECT MATTER JURISDICTION**

7. This Court has subject matter jurisdiction of this dispute pursuant to 28 U.S.C. § 1332(a)(1), diversity of citizenship, because the matter in controversy exceeds $75,000.00 exclusive of interest and costs and is between citizens of different states. Specifically, for jurisdiction purposes, the Plaintiffs are citizens of

**COMPLAINT SEEKING A DECLARATORY JUDGMENT AND DAMAGES FOR BREACH OF CONTRACT, FOR NEGLIGENCE, AND FOR ATTORNEYS' FEES**

2

California and Delaware, and Defendants are citizens of Pennsylvania or Utah and thus there is complete diversity of citizenship.

## VENUE

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or giving rise to the claims alleged in this Complaint occurred within this district as pleaded below; specifically, at all times alleged in this Complaint, Plaintiffs were doing business in Orange County, California, within this District, and Defendants made many communications to Plaintiffs received in Orange County out of which arose both the agreements referred to below and the causes of action referred to below. Specifically, a representative of BAM, acting on behalf of BAM, made approximately 100 telephone calls, WhatsApp communications, text communications, or email communications into Orange County Plaintiffs and Bown, on behalf of himself and MSBA made numerous communications of a similar kind Plaintiffs in Orange County from which arose the claims made herein.

## FACTS

9.      BAM is a business entity which, through its representative Thomas Lovse, negotiated, communicated about, and finalized the agreements referred to

**COMPLAINT SEEKING A DECLARATORY JUDGMENT AND DAMAGES FOR BREACH OF CONTRACT, FOR NEGLIGENCE, AND FOR ATTORNEYS' FEES**

herein, doing so by many written and oral communications to Plaintiffs in Orange County, California.

10.     By a Sales and Purchase Agreement ("SPA") effective as of November 16, 2020, BAM agreed to purchase from a Malaysian company called Universal SNT Trading, SDN BHD ("Universal") one million boxes of medical nitrile examination gloves (produced by a Vietnamese company) for the sum of $7,550,000. A copy of that PSA is attached to this Complaint as Exhibit 1 and incorporated herein fully as if pleaded herein in its entirety.

11.     In order to protect the purchaser, Defendant BAM, from releasing this large purchase price to the oversees seller, Universal, unless the high-quality, agreed-upon gloves had been shipped by Universal, the PSA, in paragraphs 3.2 through 3.4, stated the following protective conditions, as follows:

> (3.2) Two business days after funds have been received in the escrow account by BAM or its agent, the seller, Universal, would allow BAM to arrange what is known as a Final Random Inspection of the boxes to verify that the gloves are indeed ready to ship;
>
> (3.3) If that inspection confirmed the shipment was real, then within two business days of notice of the inspection result, Universal was to cause the gloves to be released to BAM's freight forwarder in Vietnam;
>
> (3.4) The release of the gloves to a freight forwarder was to be evidenced by a Bill of Lading, and that release would then allow payment in full of the money held in escrow by MSBA to Universal;

**COMPLAINT SEEKING A DECLARATORY JUDGMENT AND DAMAGES FOR BREACH OF CONTRACT, FOR NEGLIGENCE, AND FOR ATTORNEYS' FEES**

4

12.     Initially, BAM and Universal had wanted a bank to insure the above-stated protective conditions by administering those conditions under a letter of credit. That letter of credit was to represent to the seller, Universal, that the purchase price of $7,550,000 was assured and would be paid to the seller directly from the bank upon proof of (i) the satisfactory inspection at the factory which made the gloves to verify the gloves as being the high-quality kind stated in the SPA, and (ii) also upon showing receipt by the purchaser's freight forwarder of a bill of lading for the gloves, evidencing their shipment.

13.     However, BAM thereafter determined that, because of its current credit situation with its bank, it could not obtain a letter of credit in the short amount of time specified under the SPA for delivery of the gloves, and as a result BAM determined that it would use instead an escrow agent and escrow bank account to administer and ensure the conditions which would protect BAM and the seller in the same manner as would a letter of credit having the specifications alleged above.

14.     BAM therefore engaged the services of Defendant MSBA and its principal Defendant Bown to act as BAM's escrow agent to insure the above-referenced protective condition.

**COMPLAINT SEEKING A DECLARATORY JUDGMENT AND DAMAGES FOR BREACH OF CONTRACT, FOR NEGLIGENCE, AND FOR ATTORNEYS' FEES**

15.     BAM and MSBA entered into an Escrow Agreement which is attached as Exhibit 2 hereof and incorporated herein fully as if pleaded herein in its entirety.

16.     Under that Escrow Agreement BAM appointed MSBA as BAM's agent (See Exhibi2 2, para. 1) and thereafter BAM was to and did send the full purchase price for the gloves to MSBA which deposited those funds in an account from which, by the terms of the Escrow Agreement which adopted the protective conditions of the SPA, they would not thereafter be released to the seller until these protective conditions had been met. As the Escrow Agreement provided:

> Further to terms and conditions of the SPA [meaning the Universal/BAM Purchase Agreement having the conditions stated at paras. 3.2 through 3.4 thereof] and pursuant to the explicit instruction of the purchaser [BAM], the escrow agent shall in its name and for the account if the buyer [BAM] upon receipt of notice from Purchaser {BAM} that SGS Final Random Inspection has passed with CONFORM results, remit the sum of 7,550,00 USD as total price to seller [Universal].

17.     This language just quoted clearly adopts as obligations of BAM's escrow agent (MSBA) the protective requirements stated in paragraphs 3.2 through 3.4 of the Purchase Agreement (referred to above in para. 11 of this Complaint) which were to have been satisfied before the funds could be released by Defendant MSBA from the account to Universal. If the funds were released and for whatever

reason the gloves did not arrive, MSBA was obligated as follows, as stated in the Escrow Agreement in para. 5:

> In the event that the seller will not. . .  deliver Gloves as per terms and conditions of the SPA, then upon Purchaser issuing SPA termination notice to the seller, the Escrow Agent shall cause the Seller to return the Total Price to the bank account of the Purchaser.

18.     Plaintiff Mammoth is a corporation engaging in general business activity for profit who at all times referred to herein was doing business from its offices in Orange County. Plaintiff Hilton acts as its CEO and Plaintiff Asvadi acts a representative of Mammoth acting on its behalf. Because Mammoth was going to receive a commission on this glove sale, BAM insisted that Mammoth act a guarantor of certain of MSBA's obligations imposed by the Escrow Agreement. Specifically, a guaranty provision was added to the Escrow Agreement as follows as stated in para. 5 of the Escrow Agreement:

> The Guarantor [Mammoth] is joint and severely liable for fulfillment of escrow agent's payment obligation to refund purchaser with no regard to whether funds from the seller have been refunded or not.

19.     As an additional requirement of all the parties to the Escrow Agreement, it provided that:

> This agreement constitutes the entire agreement between the parties. This agreement may not be changed, altered, or modified except by an instrument in writing signed by the party against whom enforcement of such change would be sought.

**COMPLAINT SEEKING A DECLARATORY JUDGMENT AND DAMAGES FOR BREACH OF CONTRACT, FOR NEGLIGENCE, AND FOR ATTORNEYS' FEES**

7

20.     Under the Escrow agreement, MSBA was acting as the agent of the Purchaser and Mammoth was acting as the Guarantor of one of MSBAs obligation to BAM, namely the obligation to be "liable for fulfillment of escrow agent's payment obligation to refund purchaser" which obligation was to "cause the Seller to return the Total Price to the bank account of the Purchaser."

21.     As agent for BAM, MSBA was obligated to strictly enforce the protective conditions stated in para. 11 hereof, meaning that MSBA would not relinquish the $7,500,500until those conditions had been met.

22.     Mammoth undertook this guaranty obligation only because of the protective conditions specified in the SPA, at paras. 3.2 through 3.4, namely, that MSBA would not release the funds unless the gloves had been inspected by a neutral inspection company to assure that they were the high-quality gloves specified in the SPA, and also unless these gloves had indeed been shipped, as evidenced by BAM's freight forwarder having received a billing of lading so certifying.

23.     These protective conditions minimized the risk to Mammoth that its guaranty obligation would ever be called upon because they assured that the gloves would be of the high-quality kind specified in the agreement and that they had in

**COMPLAINT SEEKING A DECLARATORY JUDGMENT AND DAMAGES FOR BREACH OF CONTRACT, FOR NEGLIGENCE, AND FOR ATTORNEYS' FEES**

fact been shipped and thus that the purchase price was properly released to the seller (Universal) and would not have to be returned.

24.     Moreover, in addition to those protective provisions, Defendant Bown assured Mammoth that the $7,50,000 MSBA would hold as escrow agent was in an "escrow" account at Chase Bank and thereby gave assurance to Mammoth that Chase would also be obligated to comply with the protective conditions before the money was released to Universal. Indeed, Bown opened the account as an "Escrow Account" by name, which further assured Bown's verbal representation that Chase Bank would be assuring the protective conditions. This assurance by Bown, acting as agent for MSBA which was agent for BAM, was false because the Chase Bank account into which the money was transferred was not an escrow account in reality because the bank itself undertook no obligation to assure that any of the protective conditions had been met before releasing the funds. Instead, it was a simple bank account from which all its funds could be withdrawn by the simple order of Bown, without any supervision.

25.     Mammoth would never have made the guaranty involved without the protective conditions because, without them, it would in effect be guaranteeing a $7,500,000 obligation with none of the contemplated protections built into the SPA as described above and thus would be guaranteeing, without any protection or

**COMPLAINT SEEKING A DECLARATORY JUDGMENT AND DAMAGES FOR BREACH OF CONTRACT, FOR NEGLIGENCE, AND FOR ATTORNEYS' FEES**

security, obligations of a foreign seller which it did not know, and which was beyond the jurisdiction of US courts.

26.     The above-described Escrow Agreement was entered into as of November 19, 2020 and BAM caused the $7,550,000 to be transferred the "Escrow Account" at MSBA where it was to remain until the protective conditions had been fulfilled.

27.     Thereafter, the escrow agent released these funds to the seller without the seller having met the required conditions specified in SPA paragraphs 3.2 through 3.4, namely without any inspection report to verify that the high-quality gloves specified in the SPA were packed and ready for shipment as required, and without the bill of lading sent to BAM's freight forwarder to assure that the Gloves had in fact been shipped to BAM.

28.     Instead of those protective requirements being fulfilled, there was a representation by MSBA by Mammoth and, upon information and belief to BAM, that the inspection report had been completed, that it was favorable, and that if the funds were released to Universal by MSBA, that report would be released.

29.     There was no written agreement signed by the parties authorizing that change, a very substantial change, in the Escrow Agreement, despite the

**COMPLAINT SEEKING A DECLARATORY JUDGMENT AND DAMAGES FOR BREACH OF CONTRACT, FOR NEGLIGENCE, AND FOR ATTORNEYS' FEES**

requirement of para. 12.6 of that Agreement that any such change must be made in a writing signed by all parties.

30.     Notwithstanding that there was no writing confirming these substantial changes which completely eliminated the protective conditions on which Mammoth was relying, the funds were thereafter released to Universal by MSBA. There were no gloves, no inspection report, and no Bill of Lading, nor any forwarding of the gloves to the freight forwarder, all as specified in paragraphs 3.2 through 3.4.

31.     By releasing the funds in these circumstances, MSBA breached its obligations under the Escrow Agreement including its obligations to Mammoth requiring the protective conditions to have been satisfied before releasing the funds and Defendant Bown participated in that breach by personally causing these funds to be released from the bank account holding the funds without the protective conditions having been met and by failing to place them in a true escrow account which would have then required Chase Bank to have been responsible for assuring that the protective conditions had been met and, instead, by opening a regular account which, although he called it an escrow account, allowed him as the only signatory on the account to send the funds in the account to the seller without any

**COMPLAINT SEEKING A DECLARATORY JUDGMENT AND DAMAGES FOR BREACH OF CONTRACT, FOR NEGLIGENCE, AND FOR ATTORNEYS' FEES**
11

bank supervision which Bown did even though none of the protective conditions had been met.

32.     Universal has not returned the $7,500,000 that Bown sent or any part of that sum to BAM.

33.     BAM has demanded that Plaintiff Mammoth repay that sum, invoking the guaranty stated in the escrow agreement and has invoked that guaranty against not only Mammoth, but also against both Plaintiffs Hilton and Asvadi declaring that they are both liable to repay that sum of money despite the fact that neither of them were signatories to the Escrow Agreement in their personal capacities containing that guaranty.

34.     All three Plaintiffs, Mammoth, Hilton and Asvadi, have denied any liability under that guaranty clause in the Escrow agreement.

## COUNT I

### (Seeking a Declaratory Judgment)

35.     Plaintiffs reallege and incorporate by reference herein all of the allegations set forth above.

36.     There is exists a present, ripe and thus justiciable controversy between Plaintiffs and Defendant BAM.

**COMPLAINT SEEKING A DECLARATORY JUDGMENT AND DAMAGES FOR BREACH OF CONTRACT, FOR NEGLIGENCE, AND FOR ATTORNEYS' FEES**

12

37.     All Plaintiffs contend that they are not liable to BAM under the guarantee because MSBA, acting as agent for BAM, failed to assure that the protective provisions in the Escrow Agreement had been complied with before releasing the $7,500,000, abandoned those protective conditions without a signed writing by all the parties to that agreement allowing those modification as required by that agreement, and also failed to set up a proper escrow account as Bown represented that he would open, but nonetheless paid the $750,000 to Universal.

38.     Plaintiffs Hilton and Asvadi, as a separate basis, contend that in addition to the failures of MSBA described above, they are not liable on the guaranty because they did not sign the Escrow Agreement containing that guaranty in their individual capacities and therefore are not bound by any obligations contained in that agreement, including the guaranty provision.

39.     Defendant BAM on the other hand contends that the Plaintiffs are each bound by the guaranty provisions of the Escrow Agreement contending that despite any contentions of the Plaintiffs, they are all by their conduct bound by the Agreement.\

40.     In light of this controversy Plaintiffs respectfully seek to have this Court declare the rights of the parties to this controversy and specifically declare

**COMPLAINT SEEKING A DECLARATORY JUDGMENT AND DAMAGES FOR BREACH OF CONTRACT, FOR NEGLIGENCE, AND FOR ATTORNEYS' FEES**

that none of the Plaintiffs are obligated to BAM under the guaranty provisions stated in the Escrow Agreement.

## COUNT II

### (Breach of Contract by MSBA)

41.    Plaintiffs reallege and incorporate by reference herein all of the allegations set forth above.

42.    By failing to comply with the protective provisions stated in the SPA and adopted by reference in the Escrow Agreement, MSBA breached its obligation to do so and is liable for those damages in the amount to be proved at trial.

## COUNT III

### (Negligent Representation Against Defendants MSBA and Bown)

43.    Plaintiffs reallege and incorporate by reference herein all of the allegations set forth above.

44.    By undertaking to comply with the protective provisions guaranteed by the Escrow Agreement, both MSBA and Bown assumed a duty to do so with due care and this duty was owed to Mammoth.

45.    MSBA and Bown breached that duty by failing to assure compliance with the protective provisions and by allowing $7,500,000 to be sent to Universal

without any of those protections and by also failing to open a proper escrow account as Bown had represented that he had opened.

46.     This breach of duty was negligence because it was foreseeable that without the protective provisions that should have been assured before the money was sent to Universal, that money would be sent when the gloves were not in fact shipped.

47.     As a proximate result of this negligence the gloves were not shipped, and that negligence has damaged Plaintiff Mammoth in an amount to be proved at trial.

48.     BAM is likewise liable for those damages because it had appointed MSBA as its agent and is therefore liable as MSBA's principal under the doctrine of *respondeat superior*.

WHEREFORE, Plaintiffs respectfully request that the Court grant the Plaintiffs the following relief:

a.  That this Court declare and adjudge under COUNT I that none of the Plaintiffs are obligated to BAM under the guaranty provisions stated in the Escrow Agreement.

b.  That this Court award under COUNTS II and III compensatory damages in the amount to be proven at trial;

**COMPLAINT SEEKING A DECLARATORY JUDGMENT AND DAMAGES FOR BREACH OF CONTRACT, FOR NEGLIGENCE, AND FOR ATTORNEYS' FEES**

c.  That this Court award attorneys' fees and costs of suit as provided for in the Escrow Agreement; and

d.   For such other relief as this Court deems just and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury on all issues so triable pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Respectfully submitted this 16th day of February 2021.

By Counsel,

*/s/ John J.E. Markham, II*
John J.E. Markham, II
(California Bar No. 69623)
*Attorney for Plaintiffs*
MARKHAM & READ
One Commercial Wharf West
Boston, Massachusetts 02110
Tel: (617) 523-6329
Fax:(617) 742-8604
jmarkham@markhamread.com

**COMPLAINT SEEKING A DECLARATORY JUDGMENT AND DAMAGES FOR BREACH OF CONTRACT, FOR NEGLIGENCE, AND FOR ATTORNEYS' FEES**