John J. E. Markham, II (CA Bar No. 69623)
MARKHAM & READ
One Commercial Wharf West
Boston, Massachusetts 02110
Tel: (617) 523-6329
Fax: (617) 742-8604
Email: jmarkham@markhamread.com
Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| MAMMOTHRX, INC., RYAN HILTON, and AMIR ASVADI,<br><br>Plaintiffs,<br><br>-v-<br><br>BAM INTERNATIONAL, LLC, THE MSBA GROUP, INC., and MILES STEVEN BOWN,<br><br>Defendants. | Civil Action No. 8:21-cv-00305<br><br>**FIRST AMENDED COMPLAINT SEEKING A DECLARATORY JUDGMENT AND DAMAGES FOR BREACH OF CONTRACT, FOR NEGLIGENCE, AND FOR ATTORNEYS' FEES** |

COME NOW, Plaintiffs MammothRx, Inc, Ryan Hilton, and Amir Asvadi, for their First Amended Complaint against BAM International, LLC, The MSBA Group, Inc., and Miles Steven Bown, allege the following:

**FIRST AMENDED COMPLAINT SEEKING A DECLARATORY JUDGMENT AND DAMAGES FOR BREACH OF CONTRACT, FOR NEGLIGENCE, AND FOR ATTORNEYS' FEES**
1

**THE PARTIES**

1.      Plaintiff MammothRx, Inc, ("Mammoth") is a corporation organized under the laws of the State of Delaware with its principal place of business in the state of California, Orange County.

2.      Plaintiff Ryan Hilton ("Hilton") is an individual who is a citizen of the state of California, resident in Orange County.

3.      Plaintiff Amir Asvadi ("Asvadi") is an individual who is a citizen of the state of California, resident in Orange County.

4.      Defendant BAM International, Inc. ("BAM") is a corporation incorporated and having its principal place of business in the Commonwealth of Pennsylvania.

5.      The MSBA Group, Inc. ("MSBA") is a corporation incorporated and having its principal place of business in the state of Utah.

6.      Miles Steven Bown ("Bown") is a citizen of the state of Utah.

**SUBJECT MATTER JURISDICTION**

7.      This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a)(1), diversity of citizenship, because the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and is between citizens of

**FIRST AMENDED COMPLAINT SEEKING A DECLARATORY JUDGMENT AND DAMAGES FOR BREACH OF CONTRACT, FOR NEGLIGENCE, AND FOR ATTORNEYS' FEES**

different states. Specifically, for jurisdiction purposes, the Plaintiffs are citizens of California and Delaware, and Defendants are citizens of Pennsylvania or Utah, and thus there is complete diversity of citizenship.

## VENUE

8.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims alleged in this First Amended Complaint occurred within this district as pleaded below; specifically, at all times alleged in this First Amended Complaint, Plaintiffs were doing business in Orange County, California, within this District, and Defendants made many communications to Plaintiffs received in Orange County out of which arose both the agreements referred to below and the causes of action referred to below. Specifically, a representative of BAM, acting on behalf of BAM, made approximately 100 telephone calls, WhatsApp communications, text communications, or email communications into Orange County. Bown, on behalf of himself and MSBA, made numerous communications of a similar kind into Orange County, from which arose the claims made herein.

**FIRST AMENDED COMPLAINT SEEKING A DECLARATORY JUDGMENT AND DAMAGES FOR BREACH OF CONTRACT, FOR NEGLIGENCE, AND FOR ATTORNEYS' FEES**

# FACTS

9.     BAM is a business entity which, through a representative, negotiated, communicated about, and finalized the agreements referred to herein, doing so by many written and oral communications to Plaintiffs in Orange County, California.

10.     By a Sales and Purchase Agreement (sometimes hereafter "SPA") effective as of November 16, 2020, BAM agreed to purchase from a Malaysian company called Universal SNT Trading, SDN BHD ("Universal") one million boxes of medical nitrile examination gloves (produced by a Vietnamese company) for the sum of $7,550,000. A copy of that SPA is attached to this Complaint as Exhibit 1 and incorporated herein fully as if pleaded herein in its entirety.

11.     In order to protect the purchaser, Defendant BAM, from releasing the funds necessary to pay this large purchase price to the oversees seller, Universal, unless the high-quality, agreed-upon gloves had been shipped by Universal, the SPA, in paragraphs 3.2 through 3.4, stated the following protective conditions, as follows:

3.2   Within two (2) business days or less after wired funds have cleared the escrow account, Seller and/or Master Distributor shall enable Purchaser to book SGS Final Random Inspection of the Boxes, which SGS Final Random Inspection shall be conducted at Buyer's expense.

3.3   If the SGS Final Random Inspection result is CONFORM, then within two (2) business days of the receipt of said SGS Final Random Inspection

**FIRST AMENDED COMPLAINT SEEKING A DECLARATORY JUDGMENT AND DAMAGES FOR BREACH OF CONTRACT, FOR NEGLIGENCE, AND FOR ATTORNEYS' FEES**

result, Seller shall cause the Gloves to be released to Purchaser's Freight Forwarder in Vietnam (HECNY).

3.4   Upon release of the Boxes to Buyer's Freight Forwarder evidenced by executed Bill of Lading or related documentation, payment of the Total Price in full, without deduction or set off, shall be drawn from the Letter of Credit will be immediately released and available in United States dollars to Manufacturer's account.

12.     Initially, BAM and Universal had wanted a bank to insure the above-stated protective conditions by administering those conditions under a letter of credit. That letter of credit was to represent to the seller, Universal, that the purchase price of $7,550,000 was assured and would be paid to the seller directly from the bank upon proof of (i) the satisfactory inspection at the factory which made the gloves to verify the gloves as being the high-quality kind stated in the SPA, and (ii) also upon showing receipt by the purchaser's freight forwarder of a bill of lading for the gloves, evidencing their shipment.

13.     However, BAM thereafter determined that, because of its current credit situation with its bank, it could not obtain a letter of credit in the short amount of time specified under the SPA for delivery of the gloves, and as a result BAM determined that it would use instead an escrow agent and escrow bank account to administer and ensure the conditions which would protect BAM and

**FIRST AMENDED COMPLAINT SEEKING A DECLARATORY JUDGMENT AND DAMAGES FOR BREACH OF CONTRACT, FOR NEGLIGENCE, AND FOR ATTORNEYS' FEES**

the seller in the same manner as would a letter of credit having the specifications alleged above.

14.     BAM therefore engaged the services of Defendant MSBA and its principal, Defendant Bown, to act as BAM's escrow agent to insure the above-referenced protective condition.

15.     BAM and MSBA entered into an Escrow Agreement which is attached hereto as Exhibit 2 and incorporated herein fully as if pleaded herein in its entirety.

16.     Under that Escrow Agreement BAM appointed MSBA as BAM's agent (See Exhibit 2, para. 1) and thereafter BAM was to and did send the full purchase price for the gloves to MSBA, which deposited those funds in an account from which, by the terms of the Escrow Agreement that adopted the protective conditions of the SPA, they would not thereafter be released to the seller until these protective conditions had been met. As the Escrow Agreement provided:

> Further to terms and conditions of the SPA, [meaning the Universal/BAM Purchase Agreement having the conditions stated at paras. 3.2 through 3.4 thereof] and pursuant to the explicit instruction of the Purchaser [BAM], the Escrow Agent shall in its name and for the account of the buyer [BAM] upon the receipt of a notice from Purchasers [BAM] that SGS Final Random Inspection has passed with CONOFRM [*sic*] result, remit the sum of 7,550,00 USD (less costs of escrow and other offsets as allowed by Seller) as Total Price to the Seller [Universal].

**FIRST AMENDED COMPLAINT SEEKING A DECLARATORY JUDGMENT AND DAMAGES FOR BREACH OF CONTRACT, FOR NEGLIGENCE, AND FOR ATTORNEYS' FEES**

6

17.     This language just quoted clearly adopts as obligations of BAM's escrow agent (MSBA) the protective requirements stated in paragraphs 3.2 through 3.4 of the Sales and Purchase Agreement (referred to above in para. 11 of this First Amended Complaint) which were to have been satisfied before the funds could be released by Defendant MSBA from the account to Universal. If the funds were released and for whatever reason the gloves did not arrive, MSBA was obligated as follows, as stated in the Escrow Agreement in para. 5:

> In the event that the Seller will not: . . . (ii) deliver Gloves as per terms and conditions of the SPA, then upon Purchaser issuing SPA termination notice to the Seller, the Escrow Agent shall cause the Seller to return the Total Price to the bank account of the Purchaser.

18.     Plaintiff Mammoth is a corporation engaging in general business activity for profit who at all times referred to herein was doing business from its offices in Orange County, California. Plaintiff Hilton acts as its CEO and Plaintiff Asvadi acts a representative of Mammoth acting on its behalf. Because Mammoth was going to receive a commission on this glove sale, BAM insisted that Mammoth act a guarantor of certain of MSBA's obligations imposed by the Escrow Agreement. Specifically, a guaranty provision was added to the Escrow Agreement, as stated in paragraph 5 of the Escrow Agreement:

**FIRST AMENDED COMPLAINT SEEKING A DECLARATORY JUDGMENT AND DAMAGES FOR BREACH OF CONTRACT, FOR NEGLIGENCE, AND FOR ATTORNEYS' FEES**

7

The Guarantor [Mammoth] is joint and severally liable for fulfillment of Escrow Agent payment obligation to refund Purchaser with no regard whether funds from the Seller have been refunded or not.

19.    As an additional requirement of all the parties to the Escrow Agreement, it provided that:

This Agreement constitutes the entire agreement between the Parties. This Agreement may not be changed, altered, or modified except by an instrument in writing signed by the Party against whom enforcement of such change would be sought.

(Id., para. 12.6)

20.    Under the Escrow agreement, MSBA was acting as the agent of the Purchaser and Mammoth was acting as the Guarantor of one of MSBA's obligation to BAM, namely the obligation to be "liable for fulfillment of Escrow Agent payment obligation to refund Purchaser" which obligation was to "cause the Seller to return the Total Price to the bank account of the Purchaser."

21.    As agent for BAM, MSBA was obligated to strictly enforce the protective conditions stated in paragraph 11 hereof, meaning that MSBA would not relinquish the $7,550,000 until those conditions had been met.

22.    Mammoth undertook this guaranty obligation only because of the protective conditions specified in the SPA, at paras. 3.2 through 3.4, namely, that MSBA would not release the funds unless the gloves had been inspected by a

**FIRST AMENDED COMPLAINT SEEKING A DECLARATORY JUDGMENT AND DAMAGES FOR BREACH OF CONTRACT, FOR NEGLIGENCE, AND FOR ATTORNEYS' FEES**

8

neutral inspection company to assure that they were the high-quality gloves specified in the SPA, and also unless these gloves had indeed been shipped, as evidenced by BAM's freight forwarder having received a billing of lading so certifying.

23.     These protective conditions minimized the risk to Mammoth that its guaranty obligation would ever be called upon because they assured that the gloves would be of the high-quality kind specified in the agreement and that they had in fact been shipped and thus that the purchase price was properly released to the seller (Universal) and would not have to be returned.

24.     Moreover, in addition to those protective provisions, Defendant Bown assured Mammoth that the $7,550,000 MSBA would hold as escrow agent was in an "escrow" account at Chase Bank and thereby gave assurance to Mammoth that Chase would also be obligated to comply with the protective conditions before the money was released to Universal. Indeed, Bown opened the account as an "Escrow Account" by name, which further assured Bown's verbal representation that Chase Bank would be assuring the protective conditions. This assurance by Bown, acting as agent for and in the name of MSBA, which was agent for BAM, was false because the Chase Bank account into which the money was transferred was not an escrow account in reality because the bank itself undertook no obligation to assure

**FIRST AMENDED COMPLAINT SEEKING A DECLARATORY JUDGMENT AND DAMAGES FOR BREACH OF CONTRACT, FOR NEGLIGENCE, AND FOR ATTORNEYS' FEES**

that any of the protective conditions had been met before releasing the funds. Instead, it was a simple bank account from which all its funds could be withdrawn by the simple order of Bown, without any supervision.

25.    Mammoth would never have made the guaranty involved without the protective conditions because, without them, it would in effect be guaranteeing a $7,550,000 obligation with none of the contemplated protections built into the SPA, as described above, and thus would be guaranteeing, without any protection or security, obligations of a foreign seller which it did not know, and which was beyond the jurisdiction of the United States and its courts.

26.    The above-described Escrow Agreement was entered into as of November 19, 2020. BAM caused the $7,550,000 to be transferred to the "Escrow Account" at MSBA where it was to remain until the protective conditions had been fulfilled.

27.    Thereafter, the escrow agent released these funds to the seller without the seller having met the required conditions specified in the SPA, at paragraphs 3.2 through 3.4, namely without any inspection report to verify that the high-quality gloves specified in the SPA were packed and ready for shipment as required, and without the bill of lading sent to BAM's freight forwarder to assure that the gloves had in fact been shipped to BAM.

**FIRST AMENDED COMPLAINT SEEKING A DECLARATORY JUDGMENT AND DAMAGES FOR BREACH OF CONTRACT, FOR NEGLIGENCE, AND FOR ATTORNEYS' FEES**

28.   Instead of those protective requirements being fulfilled, there was a representation by MSBA to Mammoth and, upon information and belief, to BAM, that the inspection report had been completed, that it was favorable, and that if the funds were released to Universal by MSBA, that report would be released.

29.   There was no written agreement signed by the parties authorizing that change, a very substantial change, in the Escrow Agreement, despite the requirement of paragraph 12.6 of that Agreement that any such change must be made in a writing signed by the party against whom the change would be charged.

30.   Notwithstanding that there was no writing confirming these substantial changes, which completely eliminated the protective conditions on which Mammoth was relying, the funds were thereafter released to Universal by MSBA. There were no gloves, no inspection report, and no Bill of Lading, nor any forwarding of the gloves to the freight forwarder, all as specified in paragraphs 3.2 through 3.4.

31.   By releasing the funds in these circumstances, MSBA breached its obligations under the Escrow Agreement, including its obligations to Mammoth satisfy the protective conditions before releasing the funds. Defendant Bown participated in that breach by personally causing these funds to be released from the bank account holding the funds without the protective conditions having been

**FIRST AMENDED COMPLAINT SEEKING A DECLARATORY JUDGMENT AND DAMAGES FOR BREACH OF CONTRACT, FOR NEGLIGENCE, AND FOR ATTORNEYS' FEES**

met and, further, by failing to place them in a true escrow account which would have then required Chase Bank to have been responsible for assuring that the protective conditions had been met and, instead, by opening a regular account which, although he called it an escrow account, allowed him as the only signatory on the account to send the funds in the account to the seller without any bank supervision, which Bown did even though none of the protective conditions had been met.

32.    Universal has not returned the $7,550,000 that Bown sent, or any part of that sum, to BAM.

33.    BAM has demanded that Plaintiff Mammoth repay that sum, invoking the guaranty stated in the escrow agreement, and has invoked that guaranty against not only Mammoth, but also against both Plaintiffs Hilton and Asvadi, declaring that they are both liable to repay that sum of money despite the fact that neither of them were signatories to the Escrow Agreement in their personal capacities.

34.    All three Plaintiffs, Mammoth, Hilton and Asvadi, have denied any liability under that guaranty clause in the Escrow agreement.

## COUNT I

### (Seeking a Declaratory Judgment)

**FIRST AMENDED COMPLAINT SEEKING A DECLARATORY JUDGMENT AND DAMAGES FOR BREACH OF CONTRACT, FOR NEGLIGENCE, AND FOR ATTORNEYS' FEES**

12

35.     Plaintiffs reallege and incorporate by reference herein all of the allegations set forth above.

36.     There is exists a present, ripe and thus justiciable controversy between Plaintiffs and Defendant BAM.

37.     All Plaintiffs contend that they are not liable to BAM under the guaranty because MSBA, acting as agent for BAM, failed to assure that the protective provisions in the Escrow Agreement had been complied with before releasing the $7,550,000, abandoned those protective conditions without a signed writing by all the parties to that agreement allowing those modification, as required by that agreement, and also failed to set up a proper escrow account as Bown represented that he would open, but nonetheless paid the $7,550,000 to Universal.

38.     Plaintiffs Hilton and Asvadi, as a separate basis, contend that in addition to the failures of MSBA described above, they are not liable on the guaranty because they did not sign the Escrow Agreement containing that guaranty in their individual capacities and therefore are not bound by any obligations contained in that agreement, including the guaranty provision.

39.     Defendant BAM, on the other hand, contends that the Plaintiffs are each bound by the guaranty provisions of the Escrow Agreement contending that

**FIRST AMENDED COMPLAINT SEEKING A DECLARATORY JUDGMENT AND DAMAGES FOR BREACH OF CONTRACT, FOR NEGLIGENCE, AND FOR ATTORNEYS' FEES**

despite any contentions of the Plaintiffs, they are all by their conduct bound by the Agreement.

40.     In light of this controversy, Plaintiffs respectfully seek to have this Court declare the rights of the parties to this controversy and specifically declare that none of the Plaintiffs are obligated to BAM under the guaranty provisions stated in the Escrow Agreement.

## COUNT II

### (Breach of Contract by MSBA)

41.     Plaintiffs reallege and incorporate by reference herein all of the allegations set forth above.

42.     By failing to comply with the protective provisions stated in the SPA and adopted by reference in the Escrow Agreement, MSBA breached its obligation to do so and is liable for those damages in the amount to be proved at trial.

43.     Those damages include any monetary loss to Mammoth in an amount to be determined at trial and which is caused by said breach.

## COUNT III

### (Negligent Representation Against Defendants MSBA and Bown)

44.     Plaintiffs reallege and incorporate by reference herein all of the allegations set forth above.

**FIRST AMENDED COMPLAINT SEEKING A DECLARATORY JUDGMENT AND DAMAGES FOR BREACH OF CONTRACT, FOR NEGLIGENCE, AND FOR ATTORNEYS' FEES**

45.     By undertaking to comply with the protective provisions guaranteed by the Escrow Agreement, both MSBA and Bown assumed a duty to do so with due care, and this duty was owed to Mammoth. Bown, acting on behalf of MSBA, falsely represented to Mammoth that he had opened an escrow account when he had not done so.

46.     Mammoth relied upon this representation to its detriment because it would never have issued a guaranty without there being an actual escrow agreement as had been represented by Bown. Said misrepresentation was negligence.

47.     MSBA and Bown further breached their duty to Mammoth by failing to assure compliance with the protective provisions of the SPA and Escrow Agreement and by allowing $7,550,000 to be sent to Universal without any of those protections.

48.     This breach of duty was negligence because it was foreseeable that without confirming compliance with the protective provisions before the money was sent to Universal, that money would be sent when the gloves were not in fact shipped.

**FIRST AMENDED COMPLAINT SEEKING A DECLARATORY JUDGMENT AND DAMAGES FOR BREACH OF CONTRACT, FOR NEGLIGENCE, AND FOR ATTORNEYS' FEES**

49.     As a proximate result of this negligence, the gloves were not shipped, and that negligence has damaged Plaintiff Mammoth in an amount to be proved at trial.

50.     BAM is likewise liable for those damages because it had appointed MSBA as its agent and is therefore liable as MSBA's principal under the doctrine of *respondeat superior*.

WHEREFORE, Plaintiffs respectfully request that the Court grant the Plaintiffs the following relief:

      a.  That, on COUNT I, this Court declare and adjudge that none of the Plaintiffs are obligated to BAM under the guaranty provisions stated in the Escrow Agreement.

      b.  That, on COUNTS II AND III, this Court award compensatory damages in the amount to be proven at trial;

      c.  That this Court award attorneys' fees and costs of suit as provided for in the Escrow Agreement; and

      d.   For such other relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury on all issues so triable pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

**FIRST AMENDED COMPLAINT SEEKING A DECLARATORY JUDGMENT AND DAMAGES FOR BREACH OF CONTRACT, FOR NEGLIGENCE, AND FOR ATTORNEYS' FEES**

1

Respectfully submitted this 17th day of February, 2021.

2

3

By Counsel,

4

*/s/ John J.E. Markham, II*

5

John J.E. Markham, II
(California Bar No. 69623)

6

*Attorney for Plaintiffs*

7

MARKHAM & READ

8

One Commercial Wharf West
Boston, Massachusetts 02110

9

Tel: (617) 523-6329
Fax:(617) 742-8604

10

jmarkham@markhamread.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FIRST AMENDED COMPLAINT SEEKING A DECLARATORY JUDGMENT AND
DAMAGES FOR BREACH OF CONTRACT, FOR NEGLIGENCE, AND FOR
ATTORNEYS' FEES**