1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MARK C. ZEBROWSKI (CA SBN 110175)
MZebrowski@mofo.com
MORRISON & FOERSTER LLP
12531 High Bluff Drive
San Diego, California  92130-2040
Telephone: 858.720.5100
Facsimile: 858.720.5125

Attorneys for Defendant
BAM INTERNATIONAL, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MAMMOTHRX, INC., RYAN HILTON, and AMIR ASVADI,<br><br>    Plaintiffs,<br><br>  v.<br><br>BAM INTERNATIONAL, LLC, THE MSBA GROUP, INC., and MILES STEVEN BOWN,<br><br>    Defendants. | Case No. 8:21-cv-00305-DOC-ADS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BAM INTERNATIONAL, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT, OR IN THE ALTERNATIVE, FOR AN ORDER STAYING PROCEEDINGS**<br><br>Date:       April 19, 2021<br>Time:       8:30 a.m.<br>Location:  Remotely by Zoom<br><br>Action Filed:   February 16, 2021<br>Trial Date:      None<br><br>Judge:   Hon. David O. Carter |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................. 1

II.    BACKGROUND ................................................................................... 1

III.    THE FORUM SELECTION CLAUSE IS VALID AND ENFORCEABLE UNDER APPLICABLE FEDERAL LAW ...................... 2

    A.    The Forum Selection Clause is Grounds for a Motion to Dismiss Under Rule 12(b)(3) ................................................. 2

    B.    The Forum Selection Clause is Valid And Enforceable ...................... 2

    C.    Under Federal Law, Nonsignatory Plaintiffs Are Bound by the Forum Selection Clause if They Are Closely Related to Mammoth ................................................................................. 4

    D.    Plaintiffs Are Both Closely Related to Mammoth ............................ 5

    E.    Plaintiffs Are Also Subject to the Forum Selection Clause Because Their Claims Arise out of the Escrow Agreement and Hilton is and Asvadi Was an Officer of Mammoth ............................ 7

    F.    The Claims of Both Plaintiffs Should be Dismissed Because This is an Improper Venue ................................................. 8

IV.    THE FORUM SELECTION CLAUSE IS ALSO BINDING ON NON-PARTY PLAINTIFFS UNDER DELAWARE LAW ................................. 8

    A.    Delaware's Three-Prong Test For Application of the Forum Selection Clause to Plaintiffs ................................................. 9

    B.    The First Delaware Prong – The Forum Selection Clause is Valid ................................................................................. 9

    C.    The Second Delaware Prong – The Plaintiffs Are Closely Related to the Contract and it is Foreseeable that They Would be Bound by the Forum Selection Clause if They Sued on the Agreement as They Did .................................................... 10

    D.    The Third Delaware Prong – Plaintiffs' Claim Arises From the Escrow Agreement ................................................. 12

    E.    Under Delaware Law Plaintiffs Are Also Estopped From Denying the Application of the Forum Clause .................................. 13

    F.    Under Delaware Law Plaintiffs are Bound by the Forum Selection Clause ................................................. 13

V.    THE CASE SHOULD BE DISMISSED AS TO BAM ................................. 13

VI.    IF THE CASE IS NOT DISMISSED, IT SHOULD BE STAYED PENDING THE OUTCOME OF THE DELAWARE ACTION ................ 14

# TABLE OF CONTENTS
## (continued)

Page

A.    The Court Has the Power to Stay This Case.......................................14

B.    Grounds for a Stay ...............................................................................14

C.    There is no Cognizable Possible Damage From a Stay.....................15

D.    A Stay Would Reduce Hardship and Inequity on the Parties............16

E.    A Stay Will Enhance the Orderly Course of Justice..........................17

VII.   THIS CASE DOES NOT GET DEFERENCE UNDER THE FIRST
       TO FILE RULE...................................................................................17

VIII.  CONCLUSION ...................................................................................19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alltrade, Inc. v. Uniweld Prod., Inc.*,
    946 F.2d 622 (9th Cir. 1991) ............................................................................ 20

*Argueta v. Banco Mexicano*,
    87 F.3d 320 (9th Cir. 1996) ................................................................... 4, 6, 16

*Atwood v. Mendocino Coast Dist. Hosp.*,
    886 F.2d 241 (9th Cir. 1989) ............................................................................ 16

*Capital Group Cos. v. Armour*,
    No. 422-N, 2004 Del. Ch. LEXIS 159 (Del. Ch. Oct. 29, 2004) ...... 11, 13, 14, 15

*Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*,
    779 F.3d 214 (3d Cir. 2015) ................................................................ 11, 12, 13

*Carnival Cruise Lines, Inc. v. Shute*,
    499 U.S. 585 (1991) .......................................................................................... 5

*Clinton v. Janger*,
    583 F. Supp. 284 (N.D. Ill. 1984) .................................................................... 12

*CMAX, Inc. v. Hall*,
    300 F.2d 265 (9th Cir. 1962) ..................................................................... 16, 17

*Cummins v. Lollar*,
    No. CV 11-08081 DMG, 2011 WL 13134834 (C.D. Cal. Dec. 14,
    2011) ............................................................................................................... 19

*E. & J. Gallo Winery v. Andina Licores S.A.*,
    446 F.3d 984 (9th Cir. 2006) ............................................................................. 6

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin
    Intermediates, S.A.S.*,
    269 F.3d 187 (3d Cir. 2001) ................................................................ 13, 14, 15

*Hadley v. Shaffer*,
    No. 99-144-JJF, 2003 U.S. Dist. LEXIS 14106 (D. Del. Aug. 12,
    2003) ......................................................................................................... 11, 14

iii

*Ingres Corp. v. CA, Inc.*,
    8 A.3d 1143 (Del. 2010) ........................................................................... 11

*Ishimaru v. Fung*,
    2005 Del. Ch. LEXIS 167 (Del. Ch. Oct. 26, 2005) .......................................... 15

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
    342 U.S. 180 (1952) ................................................................................ 20

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) ............................................................... 16, 17, 19

*Leyva v. Certified Grocers of California, Ltd.*,
    593 F.2d 857 (9th Cir. 1979) ......................................................................... 16

*M/S Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972) ............................................................................. 5, 6, 7

*Manetti-Farrow, Inc. v. Gucci America, Inc.*,
    858 F.2d 509 (1988) ............................................................................ *passim*

*McWane, Inc. v. Lanier*,
    No. 9488-VCP, 2015 Del. Ch. LEXIS 24 (Del. Ch. Jan. 30, 2015) ............. 13, 20

*Nguyen v. Barnes & Noble, Inc.*,
    763 F.3d 1171 (9th Cir. 2014) ....................................................................... 7

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
    678 F.2d 93 (9th Cir. 1982) ........................................................................ 19

*PPL Corp. v. Riverstone Holdings LLC*,
    No. 2018-0868-JRS, 2019 Del. Ch. LEXIS 1326 (Del. Ch. Oct. 23,
    2019) ................................................................................................ 20, 21

*Ultratech, Inc. v. Ensure Nanotech (Beijing), Inc.*,
    108 F. Supp. 3d 816 (N.D. Cal. 2015) ........................................................ 9, 10

*Vance v. Google LLC*,
    No. 5:20-CV-04696-BLF, 2021 WL 534363 (N.D. Cal. Feb. 12,
    2021) ........................................................................................ 17, 18, 19

*Weygandt v. Weco, LLC*,
    No. 4056-VCS, 2009 Del. Ch. LEXIS 87 (Del. Ch. May 14, 2009) . 11, 12, 14, 15

*White Knight Yacht, LLC v. Certain Lloyds at Lloyd's London*,
  407 F. Supp. 3d 931 (S.D. Cal. 2019) ..........................................................7, 8, 9

**Other Authorities**

FRCP Rule 12(b)(3)..............................................................................................4, 16

## I.   INTRODUCTION

Defendant Bam International, LLC ("Bam")[1] moves to dismiss this case brought against it by Plaintiffs Ryan Hilton ("Hilton") and Amir Asvadi ("Asvadi")[2] because the Escrow Agreement on which Plaintiffs' single count against Bam is based expressly requires that any dispute arising out of the Escrow Agreement will be resolved in the Delaware state courts.  In the alternative, Bam moves to stay this action against it until resolution of the Delaware case.

## II.   BACKGROUND

Plaintiffs sue Bam for a single count seeking a declaratory judgment regarding their rights and duties under an Escrow Agreement which is attached as Exhibit 2 and incorporated into their FAC.  (*See, e.g.*, FAC ¶¶ 15, 18, 20, 33, 37-39 and Prayer, Section (a).)  The named parties to the Escrow Agreement are Bam International, LLC and MammothRx, Inc. ("Mammoth").  Plaintiffs admit that Hilton is Mammoth's CEO and Asvadi is a representative of Mammoth, presumably with respect to the facts and contract at issue.  (*See* FAC ¶ 18.)  In fact, in a March 5, 2021 Statement of Information filed by Mammoth with the California Secretary of State, Asvadi is identified as Mammoth's Chief Financial Officer.  (*See* Exhibit A to Declaration of Mark C. Zebrowski and Request for Judicial Notice in support of this Motion.)

Plaintiffs attach and quote from the Escrow Agreement in their FAC but they do not bother to mention Section 11.2 of that contract which states:

> If any controversy or claim, whether based on contract, tort, statute, or other legal or equitable theory (including any claim of fraud, misrepresentation, or fraudulent inducement), arising out of this Agreement (a "Dispute"), the Parties will resolve the Dispute in State

---

[1] Defendant is correctly named in the caption of Plaintiffs' First Amended Complaint ("FAC") as Bam International, LLC, but it is erroneously named in the body of the FAC as Bam International, Inc.  (*See* FAC ¶ 4.)

[2] Plaintiff MammothRx, Inc. voluntarily dismissed its claims against Bam on March 8, 2021.  (ECF No. 17.)

1

1  Courts in Delaware.

2  (Escrow Agreement, FAC Exhibit 2, Section 11.2.)

3      Federal law controls this motion.  Under applicable federal law, the forum

4  selection clause is valid and is enforceable against the nonsignatory Plaintiffs and

5  requires that this action be dismissed and that Plaintiffs pursue any claims in the

6  State Courts in Delaware.

7      The Escrow Agreement states that it is controlled by Delaware law.  If

8  Delaware law applies, the forum selection clause is also valid and enforceable

9  against Plaintiffs.

10      There will be no doubt that Plaintiffs can pursue their claims in the Delaware

11  state court should they desire to do so, as Bam filed suit against Mammoth, Messrs.

12  Hilton and Asvadi, the MSBA Group, Inc. and Miles Stephen Bown on March 1,

13  2021, in the Court of Chancery of the State of Delaware, case number 2021-0181.

14  (*See* Exhibit B to Declaration of Mark C. Zebrowski in support of this Motion.)

15      Alternatively, if the Court does not dismiss the claim against Bam, then it

16  should stay any proceedings on it pending the outcome of the Delaware action.

17  **III.   THE FORUM SELECTION CLAUSE IS VALID AND ENFORCEABLE UNDER APPLICABLE FEDERAL LAW**

18
19      **A.   The Forum Selection Clause is Grounds for a Motion to Dismiss Under Rule 12(b)(3)**

20      Federal law governs the validity of a forum selection clause in federal court.

21  *Argueta v. Banco Mexicano*, 87 F.3d 320, 326 (9th Cir. 1996); *Manetti-Farrow,*

22  *Inc. v. Gucci America, Inc.*, 858 F.2d 509, 513 (1988).  In the Ninth Circuit, a

23  motion to dismiss based on such a forum selection clause is to be treated as a

24  motion to dismiss for improper venue pursuant to Rule 12(b)(3) of the Federal

25  Rules of Civil Procedure.  *Argueta*, 87 F.3d at 324.

26      **B.   The Forum Selection Clause is Valid And Enforceable**

27      Plaintiffs' sole claim against Bam seeking a declaratory judgment is entirely

28  based and dependent upon the Escrow Agreement.  The Escrow Agreement

expressly states:

> If any controversy or claim, whether based on contract, tort, statute, or other legal or equitable theory (including any claim of fraud, misrepresentation, or fraudulent inducement), arising out of this Agreement (a "Dispute"), the Parties will resolve the Dispute in State Courts in Delaware.

(*See* Escrow Agreement, FAC Exhibit 2, Section 11.2.)

The seminal federal case regarding the validity of a forum selection clause is *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972).  In *Bremen*, the Supreme Court held that the correct doctrine to be followed by federal courts sitting in admiralty is that such clauses are *prima facie* valid and should be enforced unless enforcement is shown by the opposing party to be unreasonable under the circumstances.  *Id.* at 10.  The Court held that such clauses should be enforced specifically unless the opposing party could clearly show that enforcement would be unreasonable or unjust or that the clause was invalid for such reasons as fraud or overreaching.  *Id.* at 15.  Concerning invalidity, the Court noted that where it can be said with reasonable assurance that at the time of contracting the parties to the freely negotiated commercial agreement contemplated the claimed inconvenience, it is difficult to see why such claim should render the clause unenforceable.  *Id.* at 16.  The Court further stated:

> Whatever 'inconvenience' Zapata would suffer by being forced to litigate in the contractual forum as it agreed to do was clearly foreseeable at the time of contracting.  In such circumstances it should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.  Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain.

*Id.* at 17-18.  The Court noted that the party objecting to a forum clause has a "heavy burden of proof." *Id.* at 17.

In *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991), the Supreme

Court again considered the validity of a forum selection clause, this time in a contract between a cruise ship passenger and a cruise line. The passenger lived in the State of Washington, the cruise line was in Florida, the cruise departed from Los Angeles, and the passenger was injured off the coast of Mexico. The Court upheld the validity of a Florida forum selection clause in the passenger contract. The Court followed *Bremen* in its analysis. The Court rejected the argument that the forum selection clause was unenforceable because it was not the subject of free bargaining. 499 U.S. at 593. The Court noted that Florida is not a "remote alien forum" and that, given the fact that plaintiff's accident occurred off the coast of Mexico, the dispute was not an essentially local one inherently more suited to resolution in the State of Washington than in Florida. *Id.* at 594. The Court held that the plaintiffs had not satisfied their "heavy burden of proof" required to set aside the clause on grounds of inconvenience. *Id.* at 594-95.

While *Bremen* and *Carnival Cruise Lines* were admiralty cases, subsequent federal cases have applied the same analysis to forum selection clauses in commercial contracts outside the admiralty context. *See, e.g.*, *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984 (9th Cir. 2006); *Argueta*, 87 F.3d 320.

There are no grounds to invalidate the forum selection clause in the Escrow Agreement. It is valid and enforceable here.

**C.** **Under Federal Law, Nonsignatory Plaintiffs Are Bound by the Forum Selection Clause if They Are Closely Related to Mammoth**

While Plaintiffs are not parties to the Escrow Agreement, they assert a single claim against Bam based entirely on the Escrow Agreement, and the only relief they seek against Bam is that the Court declare and adjudge that Plaintiffs are not obligated to Bam under the guaranty provision in the Escrow Agreement. Therefore, Plaintiffs' claim against Bam is subject to the forum selection clause of the Escrow Agreement.

The United States District Court for the Southern District of California noted

that a forum selection clause can be enforced against a nonsignatory in at least two circumstances:  (1) when the nonsignatory is a third-party beneficiary of the contract; and (2) when the nonsignatory is "closely related" to the parties to the contract.  *White Knight Yacht, LLC v. Certain Lloyds at Lloyd's London*, 407 F. Supp. 3d 931, 947 (S.D. Cal. 2019) (citing *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1180 (9th Cir. 2014) and *Manetti–Farrow*, 858 F.2d 509).

### D.  Plaintiffs Are Both Closely Related to Mammoth

In *Manetti–Farrow*, 858 F.2d at 514, in footnote 5, the Ninth Circuit explained that where "the alleged conduct of the non-parties is so closely related to the contractual relationship", "'a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses.'"

Manetti-Farrow entered into an exclusive contract with only defendant Gucci Parfums.  The contract had a Florence, Italy forum selection clause.  When Gucci Parfums terminated that contract, plaintiff sued Gucci Parfums, Gucci America, Guccio Gucci and three individual directors of various Gucci enterprises in the Northern District of California.  Plaintiff's complaint included causes of action for (1) conspiracy to interfere with contractual relations against all defendants; (2) conspiracy to interfere with prospective economic advantage against all defendants; (3) tortious interference with contractual relations against Gucci America and two directors; (4) tortious interference with prospective economic advantage against Gucci America and two directors; (5) breach of implied covenant of good faith and fair dealing against Gucci America; and (6) unfair trade practices (against Gucci America).  The district court held that all of these claims against all the named defendants were covered by the forum selection clause and dismissed the case.

The Ninth Circuit first confirmed that the *Bremen* rule controls enforcement of forum clauses in diversity cases.  *Manetti–Farrow*, 858 F.2d at 513.  The court then noted that each of plaintiff's claims relates in some way to rights and duties enumerated in the exclusive dealership contract and the claims cannot be

adjudicated without analyzing whether the parties were in compliance with the contract. *Id*. at 514. The court rejected plaintiff's argument that the forum selection clause only applied to the signatory party Gucci Parfums, recognizing that where "the alleged conduct of the non-parties is so closely related to the contractual relationship", "'a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses,'" and agreeing with the district court that the alleged conduct of the non-parties was so closely related to the contractual relationship that the forum selection clause applies to all defendants. *Id*. n.5.[3]

In *White Knight Yacht, LLC*, 407 F. Supp. 3d 931, the court rejected the plaintiff's argument that it was not bound by a forum selection clause in an insurance policy because it was not a party to that policy. The court concluded that the plaintiff was undoubtedly closely related to the contractual relationships to which the forum selection clause applies because the policy benefits were payable to the plaintiff. The court further stated "[c]ritically, Plaintiff seeks to recover from all Defendants for Plaintiff's failure's obtain coverage under the Cargo Policy," and concluded that the plaintiff was bound by the forum selection clause on that basis as well, even if Plaintiff is not a party to the contract. *Id*. at 947.

Here, Plaintiffs admit that Hilton is Mammoth's CEO. (FAC ¶ 18.) The Escrow Agreement attached as FAC Exhibit 2 and incorporated into the FAC identifies "ryan@mammothrx.com" as the person to receive notices on Mammoth's behalf. This is the email address for Mr. Hilton. (*See* Declaration of Steve Fitzgibbon filed herewith.) Hilton signed the Escrow Agreement on behalf of

---

[3] The court also rejected plaintiff's argument that it should not be bound by the forum clause because the alleged wrongful acts were committed principally in the United States, stating that plaintiff's argument overlooks several important facts including that its complaint centers on a dispute over a contract executed in Italy with an Italian corporation, the contract involves the distribution of Italian goods, and most important, the contract contains a forum selection clause which designates Florence, Italy as the place for the resolution of the disputes in this case. *Id*. at 515.

Mammoth.  The FAC states that Asvadi "acts a representative of Mammoth acting on its behalf."  (FAC ¶ 18.)  In fact, on March 5, 2021, he was identified as Mammoth's CFO – *i.e,* a Mammoth officer – in an official Mammoth corporate filing with the California Secretary of State.  On March 11, 2021, Mammoth filed a subsequent Statement of Information with the California Secretary of State that identifies Hilton as both the CEO and the CFO – in place of Asvadi.  But the fact is, Asvadi was Mammoth's CFO for at least a short period, so he is obviously well placed within the company.  The fact that Asvadi is no longer officer on a public document that was filed at a time when jurisdiction over him is at issue does not defeat jurisdiction here, as a party's position as a corporate officer is just one factor to consider and he was a corporate officer during the pendency of this case.

As in *Manetti–Farrow*, Plaintiffs' single claim here relates solely to rights and duties enumerated in the Escrow Agreement and the conduct at issue is so closely related to the contractual relationship that the forum selection clause applies to Plaintiffs.  Likewise, as in *White Knight*, Plaintiffs seek to adjudicate rights and duties under the Escrow Agreement, and therefore they are bound by the forum selection clause in it even if they are not parties to it.

### E.  Plaintiffs Are Also Subject to the Forum Selection Clause Because Their Claims Arise out of the Escrow Agreement and Hilton is and Asvadi Was an Officer of Mammoth

In *Ultratech, Inc. v. Ensure Nanotech (Beijing), Inc.*, 108 F. Supp. 3d 816, 823 (N.D. Cal. 2015), the court invoked a forum selection clause to establish personal jurisdiction over an individual foreign resident even though he was not a party to the contract with the forum clause.

Citing *Manetti-Farrow*, the *Ultratech* court first noted that a forum selection clause in an agreement extends to "a range of transaction participants, parties and non-parties."  *Id*. at 822.  The court then observed:

> With one exception, every district court in our circuit [the Ninth] that has considered whether to apply a forum-selection clause to a corporate officer or related company that was not part of the agreement to which

it applies in his or her individual capacity has enforced that forum-selection clause, provided the claims in the suit related to the contractual relationship.

*Id.* (citations omitted).

The *Ultratech* court followed "the prevailing trend of enforcing a forum-selection clause against a non-party officer where the claims against the officer in his individual capacity relate to the contractual relationship, at least where the officer is a signatory and where the officer is accused of subverting the very agreement he signed." *Id.* at 823.  Because at least some claims against the individual related to the contractual relationship between the contacting parties, the individual was subject to the forum selection clause. *Id.*  The court further stated that because the individual defendant was subject to the forum selection clause, he had consented to the court's personal jurisdiction over him. *Id.*

Hilton is Mammoth's CEO and he signed the Escrow Agreement.  Asvadi was recently identified as by Mammoth as its CFO in an official filing with the California Secretary of State.  The single claim they both assert against Bam certainly relates to the contractual relationship between Mammoth and Bam. Indeed, Mammoth was initially a party to the same single count against Bam in the FAC.  This is further reason to find that the Plaintiffs are subject to the forum selection clause in the Escrow Agreement and that their claim against Bam must be dismissed because it is filed in an improper venue.

**F.      The Claims of Both Plaintiffs Should be Dismissed Because This is an Improper Venue**

Both Plaintiffs are bound by the forum selection clause under applicable federal law.  Therefore, their claim against Bam should be dismissed because it is brought in an improper venue.

**IV.    THE FORUM SELECTION CLAUSE IS ALSO BINDING ON NON-PARTY PLAINTIFFS UNDER DELAWARE LAW**

As noted above, federal law should govern this motion.  However, the Escrow Agreement expressly provides that it shall be construed and governed in

accordance with the laws of the State of Delaware.  (*See* FAC Exhibit 2, Section 11.1.)  If the Court applies Delaware law rather than federal law, Plaintiffs are likewise subject to the forum selection clause and their claim against Bam should be dismissed.  The Delaware authorities also confirm that Delaware will exercise jurisdiction over the Plaintiffs in the action Bam filed there.

**A.      Delaware's Three-Prong Test For Application of the Forum Selection Clause to Plaintiffs**

In *Weygandt v. Weco, LLC*, No. 4056-VCS, 2009 Del. Ch. LEXIS 87 (Del. Ch. May 14, 2009), the Delaware Chancery Court addressed whether a forum selection clause applied to a non-party to the contract.  The court looked to *Capital Group Cos. v. Armour*, No. 422-N, 2004 Del. Ch. LEXIS 159 (Del. Ch. Oct. 29, 2004), which held that a non-signatory was bound by a forum selection clause after applying a three-step analysis adopted from the United States District Court for the District of Delaware's opinion in *Hadley v. Shaffer*, No. 99-144-JJF, 2003 U.S. Dist. LEXIS 14106, at *4 (D. Del. Aug. 12, 2003), as follows:

> First, is the forum selection clause valid?  Second, are the defendants third-party beneficiaries, or closely related to, the contract?  Third, does the claim arise from their standing relating to the merger agreement?

*Weygandt*, 2009 Del. Ch. LEXIS 87, at *11-12 (citation omitted).

**B.      The First Delaware Prong – The Forum Selection Clause is Valid**

Under Delaware law, like federal law, forum selection clauses are presumed to be valid unless the challenging party "clearly show[s] that enforcement would be unreasonable and unjust, or that the clause [is] invalid for such reasons as fraud and overreaching."  *See Ingres Corp. v. CA, Inc.*, 8 A.3d 1143, 1146 (Del. 2010) (alterations in original); *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 218 (3d Cir. 2015).

There are no grounds to invalidate the forum selection clause in the Escrow Agreement; it is valid here.

**C.     The Second Delaware Prong – The Plaintiffs Are Closely Related to the Contract and it is Foreseeable that They Would be Bound by the Forum Selection Clause if They Sued on the Agreement as They Did**

Regarding the second prong, the *Weygandt* court noted that there are two ways a party can be closely related to an agreement:  (1) he receives a direct benefit from the agreement, or (2) it was foreseeable that he would be bound by the agreement.  2009 Del. Ch. LEXIS 87, at *15.

The *Weygandt* court noted that the cases hold that a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses.  *Id.*, at *19 n.26.  The *Weygandt* court cited *Manetti-Farrow*, 858 F.2d 509 at 14 n.5, quoting from *Clinton v. Janger*, 583 F. Supp. 284, 290 (N.D. Ill. 1984), as follows:  "We agree with the district court that the alleged conduct of the non-parties is so closely related to the contractual relationship that the forum selection clause applies to all defendants."

*Carlyle Inv. Mgmt. LLC*, 779 F. 3d 214, discussed the application of the second Delaware prong.  There, defendant Plaza was not a signatory to the contract with the forum selection clause.  The *Carlyle* court noted that "[w]ith respect to the second element, even if defendants are not parties to the agreement or third-party beneficiaries of it, they may be bound by the forum selection clause if they are closely related to the agreement in such a way that it would be foreseeable that they would be bound."  *Id*. at 219 (citation omitted).  Continuing, the *Carlyle* court recognized that "[i]n determining whether a non-signatory is closely related to a contract, courts consider the non-signatory's ownership of the signatory, its involvement in the negotiations, the relationship between the two parties, and whether the non-signatory received a direct benefit from the agreement."  *Id*. (citation omitted).  The court noted that Plaza was a director of a signatory party, Moonmouth, and that Plaza executed the contract on the Moonmouth's behalf.  It further noted that Mr. Reijtenbagh owned and controlled both Plaza and

MPA iso Bam's Motion to Dismiss FAC
Civil Action No. 8:21-cv-00305

1    Moonmouth; Reijtenbagh is listed as Moonmouth's primary contact person; his

2    address includes "c/o Plaza"; he was listed as the person authorized to give

3    instructions on behalf of Moonmouth; and he engaged in negotiations for the

4    contract. *Id*. Finding that Plaza was bound by the forum selection clause, the

5    *Carlyle* court stated: "This result is consistent with Delaware cases in which

6    affiliates, officers, and directors have been held to be bound by forum selection

7    clauses." *Id*. (citation omitted).

8         The "closely related" doctrine is a form of equitable estoppel. *See Capital*

9    *Group* , 2004 Del. Ch. LEXIS 159, at *24-26. This doctrine prevents "a non-

10   signatory from embracing a contract, and then turning its back on the portions of

11   the contract . . . that it finds distasteful." *E.I. DuPont de Nemours & Co. v. Rhone*

12   *Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 200 (3d Cir. 2001).

13        As noted above, Plaintiffs admit that Hilton is Mammoth's CEO; the Escrow

14   Agreement designates him as the person to receive notices on Mammoth's behalf;

15   and he signed the Escrow Agreement on behalf of Mammoth. The FAC admits

16   that, presumably for purposes of the claim at issue regarding the Escrow

17   Agreement, Asvadi acts as a representative on behalf of Mammoth, and was

18   recently designated by Mammoth as its CFO. And here Bam is not suing Hilton or

19   Asvadi on the Escrow Agreement; they are suing Bam on the Escrow Agreement

20   which they attach to and incorporate in their FAC. It is certainly foreseeable that in

21   doing so they would be bound by the forum selection clause in the contract on

22   which their single claim against Bam is based. For example, in *McWane, Inc. v.*

23   *Lanie*r, No. 9488-VCP, 2015 Del. Ch. LEXIS 24, at *26-27 (Del. Ch. Jan. 30,

24   2015), the court found that it was foreseeable that individuals would be bound by

25   the forum selection clause in a merger agreement in part because they were

26   "asserting claims arising under the Merger Agreement" in a separate action.

27   Furthermore, Plaintiffs cannot embrace the contract by suing on it, then turn their

28   backs on the forum selection clause for which Bam negotiated. *See DuPont*, 269

11

MPA iso Bam's Motion to Dismiss FAC
Civil Action No. 8:21-cv-00305

1    F.3d at 200.[4]

2        It was certainly foreseeable that this case arising out of and entirely

3    dependent on the Escrow Agreement was to be filed in the Delaware state courts.

4        **D.    The Third Delaware Prong – Plaintiffs' Claim Arises From
              the Escrow Agreement**

5        Concerning the third prong, the *Weygandt* court noted that the *Hadley* court

6    phrased the third prong of this test as both "whether the present claim arises from

7    [the Hadleys'] standing relating to the Merger Agreement" and "do the claims

8    against the Hadleys arise from their status relating to the Merger Agreement?"

9    2009 Del. Ch. LEXIS 87, at *12 n.15 (alterations in original) (citations omitted).  It

10   further noted that the *Hadley* court explained that the legal requirement underlying

11   this prong was that "[i]n order for the Hadleys to be bound by the terms of the

12   forum selection clause, the claims asserted must arise from the Merger Agreement

13   at issue."  *Id*.  And the *Weygandt* court noted that the *Capital Group* court stated

14   "[i]n order for Ritter to be bound by the terms of the forum selection clause [in the

15   SRA], the claims asserted must arise from the SRA."  *Id*.

16       The *Weygandt* court then concluded:  "Thus, as applied, the meaning of the

17   third prong of the *Capital Group* test is that the agreement containing the forum

18   selection clause must also be the agreement that gives rise to the substantive claims

19   brought by or against a non-signatory in order for the forum selection clause to be

20   enforceable against the non-signatory."  *Id*. at *12-14 n.15.

21       The Escrow Agreement solely and exclusively gives rise to Plaintiffs' claims

22   against Bam.  Plaintiffs assert a single claim against Bam for a declaration of rights

23   and responsibilities under the Escrow Agreement, and the only thing they pray for

24   on that claim is that the court declare and adjudge that none of the Plaintiffs are

25

26   ---
     [4] In *DuPont,* the court declined to enforce an arbitration clause against a non-
27   signatory party because, while it was a close call, that party's claim was sufficiently
     based on a separate oral agreement.  *Id.* at 201.  Here Plaintiffs' sole claim is based
28   entirely on the Escrow Agreement.

MPA iso Bam's Motion to Dismiss FAC
                                                              Civil Action No. 8:21-cv-00305

obligated to Bam under the guaranty provisions stated in the Escrow Agreement.

### E. Under Delaware Law Plaintiffs Are Also Estopped From Denying the Application of the Forum Clause

The *Weygandt* court also expressed that Delaware law will use principles of equitable estoppel to determine when parties to a case are bound by a forum selection clause in a contract. *Id*., at *11 n.13 (citing *Ishimaru v. Fung,* 2005 Del. Ch. LEXIS 167 (Del. Ch. Oct. 26, 2005)); *see also DuPont*, 269 F.3d at 200. Likewise, in *Capital Group*, 2004 Del. Ch. LEXIS 159, at *26, the court noted that the doctrine of equitable estoppel prevents a nonsignatory to a contract from embracing the contract, and then turning her back on the portions of the contract, such as a forum selection clause, that she finds distasteful.

The *Weygandt* court noted that the *Ishimaru* plaintiff sued the subsidiary of a company with which the plaintiff had a contract and argued that the nonsignatory subsidiary was so indistinct from its signatory parent that the subsidiary could be treated as a party to the agreement, but the plaintiff argued that they could not enforce the agreement's arbitration clause against him.  In *Ishimaru*, the Delaware Chancery Court ruled that that the plaintiff was equitably estopped from denying the defendant's demand to arbitrate.  2005 Del. Ch. LEXIS 167, at *5.

Here, Plaintiffs sue Bam on one count that is wholly based on the Escrow Agreement.  They are equitably estopped from seeking a declaratory judgment of their rights and obligations under that contract in this Court while ignoring the Delaware forum selection clause in the agreement.

### F. Under Delaware Law Plaintiffs are Bound by the Forum Selection Clause

All three prongs of the Delaware test are satisfied here.  If the Court applies Delaware law, Plaintiffs are bound by the forum selection clause in the Escrow Agreement.

### V. THE CASE SHOULD BE DISMISSED AS TO BAM

The Escrow Agreement forum selection clause is valid and enforceable

against Plaintiffs.  Therefore, the Court should grant Bam's motion and dismiss the action as to Bam under Rule 12(b)(3) of the Federal Rules of Civil Procedure because this Court is an improper venue for Plaintiffs' claims.  *See, e.g., Argueta*, 87 F. 3d at 324.

## VI.   IF THE CASE IS NOT DISMISSED, IT SHOULD BE STAYED PENDING THE OUTCOME OF THE DELAWARE ACTION

If the Court does not enforce the forum selection clause against the Plaintiffs and dismiss both of their claims against Bam, then their claims here should be stayed as to Bam.

### A.   The Court Has the Power to Stay This Case

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  If the Court finds that it has jurisdiction despite the forum selection clause, then the Court should stay pursuant to the *Landis* standards discussed herein rather than dismiss the Plaintiffs' claims.  *See, e.g., Atwood v. Mendocino Coast Dist. Hosp.*, 886 F.2d 241 (9th Cir. 1989).

### B.   Grounds for a Stay

The Ninth Circuit applies the *Landis* test to balance the competing interests "which will be affected by the granting or refusal to grant a stay."  *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254-55).  "Among these competing interests are [1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."  *Id*.

As stated in *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979):

A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court.

### C.     There is no Cognizable Possible Damage From a Stay

In *CMAX*, the Ninth Circuit weighed the *Landis* factors and upheld the district court's decision to stay the case.  300 F.2d at 269.  In reaching this conclusion, the court noted that the plaintiff in the stayed case only sought damages and alleged no continued harm and sought no injunctive or declaratory relief.  *Id.*  Thus, delay of the suit would only lead to delay in monetary recovery.  *Id.*  Additionally, the court noted that findings made in the other suit would be beneficial for resolving the case before it.  *Id.*

A stay is not harmful simply because of delay.  *Vance v. Google LLC*, No. 5:20-CV-04696-BLF, 2021 WL 534363, at *4 (N.D. Cal. Feb. 12, 2021).  Rather, harmfulness must be proven with supporting evidence.  *Id.*  Examples of possible damage resulting from delay include when a plaintiff is seeking injunctive relief and delay would allow a defendant to continue infringing its patent, and the loss of documentary or testimonial evidence due to delay.  *Id.*  In *Vance*, the court found no significant risk of harm because the plaintiff was a party to each case, so its claims were not being litigated by an outside party, and the plaintiff presented no proof that evidence would be degraded due to delay.  *Id.*, at *5.

Here the other action is pending in Delaware state court where it belongs pursuant to the Escrow Agreement.  Mammoth and Plaintiffs are named defendants in that case, so unlike here where Mammoth has dismissed its claims, both signatory parties to the Escrow Agreement are parties to the Delaware action.  Plaintiffs here do not even seek damages; they only seek to litigate their rights and duties under the Escrow Agreement.  Those issues will be litigated in the Delaware

court, which will duly apply Delaware law as required under the Escrow Agreement, and Plaintiffs can pursue their declaratory relief claims as counter-claims there.  No evidence will be degraded; the evidence will be preserved and timely discovered and presented in the Delaware case.  And to the extent anything remained to be litigated here, findings made in the other suit which involves both signatory parties would certainly be beneficial for resolving what might be left of this case.

### D.     A Stay Would Reduce Hardship and Inequity on the Parties

Hardship can result when there is a potential for inconsistent rulings or confusion as a result of litigating two similar cases. *Vance*, 2021 WL 534363, at *5.  This possibility of hardship is greatest when there is legal and factual overlap between the cases.  *Id.*  In *Vance,* the court found that the overlap between the two cases posed a risk that the parallel proceedings would create inconsistent and confusing outcomes.  *Id.* at *6.  Further, there was a possibility the decisions in the other case could render issues in this case moot.  *Id.*  Thus, the court found this factor weighed in favor of staying the case.  *Id.*

Both signatory parties to the Escrow Agreement are parties to the Delaware action, while Mammoth dismissed its claims and is not a party here.  There is a sufficient legal and factual overlap between the two cases.  The Delaware action will address the interpretation, validity and enforcement of the Escrow Agreement under Delaware law, which is exactly what Plaintiffs ask this Court to do.  There is certainly a risk of potentially inconsistent rulings from the Delaware court that has jurisdiction over the signatory parties and this Court which does not.  And the decision of the Delaware court could possibly render this case moot.  For example, in the FAC, Mammoth sought a declaration that it was not liable on the guaranty because MSBA was acting as the agent of Bam.  (*See, e.g*., FAC ¶¶ 20, 37.) Mammoth will presumably raise similar counter-claims and defenses in the Delaware court and that issue may well be adjudicated there.

### E.   A Stay Will Enhance the Orderly Course of Justice

While listed third, the judicial economy factor is the most important to courts when deciding whether to stay a case. *Vance*, 2021 WL 534363, at \*6.  Avoiding duplicative cases preserves judicial resources, as well as the resources of the parties. *Id.*  Likewise, in *Landis*, the Supreme Court recognized the economy of time and effort for the court, for counsel, and for litigants as factors to consider in connection with a stay. *Landis,* 299 U.S. at 254.  In *Vance*, the court found it in the interest of judicial economy to stay the case because there were overlapping issues and some of the issues might be rendered moot by the decisions in the other case. *Vance*, 2021 WL 534363, at \*6.

Staying this action in deference to the Delaware case will certainly enhance the economy of time and effort for this Court, for counsel, and for the litigants given that there are overlapping issues and some of them may be rendered moot by the Delaware case, particularly once the Delaware defendants appear and raise their affirmative defenses and any counter-claims they desire to pursue.

### VII.   THIS CASE DOES NOT GET DEFERENCE UNDER THE FIRST TO FILE RULE

While this case was filed before the Delaware case, that does not mean this case has any preference.

In the Ninth Circuit, the first to file rule only applies when a prior action was filed in another United Stated District Court. *See, e.g.*, *Pacesetter Sys., Inc. v. Medtronic, Inc*., 678 F.2d 93, 94-95 (9th Cir. 1982); *Cummins v. Lollar*, No. CV 11-08081 DMG (MANx), 2011 WL 13134834, at \*4 (C.D. Cal. Dec. 14, 2011).  The rule does not apply here.

Even if the federal first to file rule did apply, this action should be dismissed or stayed in deference to the Delaware action.  In *Pacesetter*, the Ninth Circuit recognized that the first to file rule should not be applied rigidly or mechanically, but with a "view to the dictates of sound judicial administration."  678 F.2d at

95.  In *Alltrade, Inc. v. Uniweld Prod., Inc.*, 946 F.2d 622, 627-28 (9th Cir. 1991), the court recognized that "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems."  (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)).  The Ninth Circuit identified the circumstances under which an exception to the first to file rule typically will be made include bad faith, anticipatory suits and forum shopping. 946 F. 2d at 628.  The *Alltrade* court stated that "[t]he most basic aspect of the first-to-file rule is that it is discretionary; 'an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts.'"  *Id*. at 628 (citing *Kerotest,* 342 U.S. at 183-84).

The Escrow Agreement has a Delaware forum selection clause.  There is a case pending in Delaware between the signatories to that contract.  This is the wrong venue for any litigation between signatories Bam and Mammoth; their litigation must take place in the Delaware state court.  Plaintiffs here are subject to jurisdiction in Delaware.  Plaintiffs' – and Mammoth's – filing here was a bad faith anticipatory filing and obvious "home town" forum shopping which the Escrow Agreement precludes.  Sound judicial discretion, judicial economy, comprehensive disposition of litigation and the avoidance of inconsistent rulings all warrant dismissing or staying this case in deference to the Delaware action.

If this Court were to apply Delaware law, it should likewise dismiss or stay this action in deference to the Delaware case.  Under Delaware law, the first to file rule can be overridden by contract, including by a forum selection clause.  As the court determined in *McWane*, 2015 Del. Ch. LEXIS 24, at *36:  "Having previously concluded that the Individual Defendants are bound by a valid forum selection clause in the Merger Agreement, I find that that clause governs the parties' relationship and displaces *McWane's* default first-filed rule."  Similarly, in *PPL Corp. v. Riverstone Holdings LLC*, No. 2018-0868-JRS, 2019 Del. Ch. LEXIS

1326, at *21-22 (Del. Ch. Oct. 23, 2019), where the plaintiff alleged defendant caused entities over which it exercised control to file actions in Montana in part to attempt to avoid the Delaware forum selection clause in a contract, the court concluded that it would be "inequitable not to enforce the contractually bargained for forum selection clause simply because [defendant] caused the Montana Actions to be filed by nonparties to that contract."

Plaintiffs, including Mammoth, raced to court in California to avoid the Delaware forum selection clause in the Escrow Agreement.  If the Court applies Delaware law, it should stay this case in deference to the Delaware action in light of the controlling Delaware forum selection clause.

**VIII. CONCLUSION**

As a result of the forum selection clause in the Escrow Agreement, this Court has no jurisdiction over Bam.  Therefore, the claim against Bam should be dismissed.  If the Court does not dismiss that claim, then this case should be stayed pending the outcome of the Delaware proceedings.

Dated:     March 30, 2021

MORRISON & FOERSTER LLP

By:  /s/ Mark C. Zebrowski
     Mark C. Zebrowski

Attorneys for Defendant
BAM INTERNATIONAL, LLC